IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HIGHLAND CRUSADER OFFSHORE PARTNERS, L.P., et al., | § § § | |
| v. | § § | A-06-CA-540 LY |
| MOTIENT CORPORATION AND CAPITAL & TECHNOLOGY ADVISORS, INC. | § § § § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Plaintiffs' Motion to Remand and for Summary Remand and Expedited Consideration filed July 18, 2006 (Clerk's Doc. No. 7); Defendant Capital & Technology Advisors, Inc.'s Response to Plaintiffs' Motion to Remand and for Summary Remand and Expedited Consideration filed July 21, 2006 (Clerk's Doc. No. 11); Defendant Motient Corporation's Opposition to Plaintiffs' Motion to Remand and for Summary Remand and Expedited Consideration filed July 26, 2006 (Clerk's Doc. No. 18); Defendants Capital & Technology Advisor, Inc's Motion to Dismiss Plaintiffs' Complaint filed July 21, 2006 (Clerk's Doc. No. 10); Defendant Motient Corporation's Motion to Dismiss filed July 26, 2006 (Clerk's Doc. No. 19); Plaintiffs' Response to Defendants' Motion to Dismiss filed August 14, 2006 (Clerk's Doc. No. 35); Defendant Capital & Technology Advisors Inc.'s Reply to Plaintiffs' Response to Motion to Dismiss Plaintiff's Complaint filed August 24, 2006 (Clerk's Doc. No. 37); and Defendant Motient Corporation's Reply in Support of its Motion to Dismiss (Clerk's Doc. No. 38).  The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b)(1)(B), Federal

Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

The Court held a hearing on the motions on October 4, 2006. At the end of that hearing, the parties informed the Court that they had a mediation in this case scheduled for October 23, 2006.[1] Accordingly, the Court withheld ruling on the motions pending that attempt at settlement. The Court was subsequently notified that, while the parties had not settled on October 23, an additional session was scheduled for November 3, 2006. Thus, the Court once again withheld ruling until that session had been completed. Having been informed that the November 3rd session was also unsuccessful, the Court issues the following recommendations.

## I. BACKGROUND

Plaintiffs own stock in Defendant Motient Corporation ("Motient"), which provides wireless mobile data services and invests in securities of companies seeking licenses to operate in underdeveloped satellite communications frequencies, including a company called Mobile Satellite Ventures, L.P. ("MSV"). *See* Plaintiffs' Original Complaint, ¶10. Motients' Board of Directors entered into an agreement with SkyTerra Communications, Inc., a company which currently owns a minority position in MSV, that would increase SkyTerra's ownership of MSV (the "SkyTerra Agreement"). *Id.* Plaintiffs allege that Defendant Capital & Technology Advisors, Inc. ("CTA") acted as a consultant to Motient on this transaction and advised Motient to enter into the agreement with SkyTerra. *Id.* Plaintiffs assert that if the SkyTerra agreement is consummated, Plaintiffs would

---

[1]The mediation of this case was part of a consolidated attempt to settle all of the litigation in which the parties are suing one another throughout the country. There are apparently five lawsuits in all in which the parties are adverse to one another.

receive shares of SkyTerra in exchange for their shares of Motient, and the result would be unfair to Motient's shareholders in many ways – *e.g.*, the proposed transaction will require Motient to pay tens of millions of dollars in corporate taxes; the proposed deal requires Motient to cede control of MSV to SkyTerra without evidence of any control premium being paid to Motient's stockholders; and the transaction was deliberately structured to avoid a stockholder vote – which of course includes Plaintiffs. *Id.*

Unsatisfied with this proposition, Plaintiffs filed suit in Travis County on June 15, 2006, arguing that the agreement violates the Investment Company Act ("ICA") of 1940 and is therefore unenforceable under § 47(b) of the ICA, and will result in the distribution of a false registration statement in violation of §§ 11 and 12(a)(2) of the 1933 Securities Act (the "Act").[2]

## II.   SECURITIES ACT CLAIMS

**A.   Standard of Review**

Federal courts are courts of limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Federal courts have subject matter jurisdiction and are authorized to entertain causes of action only where a question of federal law is involved or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00. 28 U.S.C. §§ 1331, 1332. In a removed action, a district court is required to remand a case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *Howery*, 243 F.3d at 916. In order to determine whether jurisdiction is present,

---

[2]Securities Act of 1933, ch. 38, 48, Stat. 74 (codified as amended at 15 U.S.C. §§ 77a-77aa (2000)).

the claims set forth in the state court petition are considered as of the time of removal. *See Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir.2000). Any ambiguities are construed against removal because the removal statute is strictly construed in favor of remand. *See Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir.2002).

**B.     Removal**

Defendant Motient removed this lawsuit to federal court, *see* Notice of Removal filed July 14, 2006 (Clerk's Doc. No. 1), and Defendant CTA consented. *See* Notice of Consent to Removal by Capital & Technology Advisors, Inc. filed July 14, 2006 (Clerk's Doc. No. 3). Plaintiffs' argue that remand is required because Congress expressly provided that violations of the Securities Act of 1933 are non-removable.[3] Specifically, the 1933 Act states: "No case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v. Defendants contend that the claim is removable despite this statutory restriction, because the 1933 Act claim is baseless, and was added for the sole purpose of defeating removal. Thus, Defendants ask the Court to "pierce the pleadings," dismiss the 1933 Securities Act claim, and deny Plaintiffs' motion to remand.

---

[3] Plaintiffs' contend that Motient's Notice of Removal (based on federal question jurisdiction §1441(b)) waived any of its other arguments, such as the ones that follow. To support this proposition, they cite cases and the Wright & Miller treatise for the proposition that a defendant cannot amend his Notice of Removal to allege completely *new* grounds for removal jurisdiction. While the proposition is undoubtedly correct, it does not apply here. There was no amendment to the notice of removal; instead Defendants submitted a brief(s) to the court opposing remand. Second, the notice of removal only need contain "a short and plain statement" of the grounds for removal. *Miller v. Principal Life Ins. Co.*, 189 F. Supp. 254 (E.D. Pa. 2002). Defendant Motient's arguments for removal, such as fraudulent joinder of a claim, are not alleging entirely new grounds, and are consistent with the notice of removal.

4

Defendants' argument relies on *Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001). There, the Fifth Circuit gave its imprimatur to piercing the pleadings in a Securities Act case in order to determine that the securities cause of action had been fraudulently pled to prevent removal. *Id.* at 357. More recently the Circuit similarly ruled that a "fraudulently pleaded Jones Act claim does not . . . bar removal," and "a defendant may 'pierce pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal.'" *Holmes v. Atlantic Sounding Co., Inc.*, 437 F.3d 441, 445 (5th Cir. 2006) (quoting *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995). In *Lewis*, the Fifth Circuit affirmed the district court's decision to pierce the pleadings because Fresne had conclusively shown that the transaction at issue – a private note through which Lewis loaned a New England ice cream franchise $650,000 – was not a "security" and he therefore could not, by definition, have a cause of action under the Securities Act of 1933. *Id.* at 355-57. The court went on to explain that the burden is on the defendant to show that "the Securities Act claim is baseless." *Id*. at 357. That is, the defendant "must show that there is no possibility that plaintiff would be able to establish a cause of action." *Id*. (quoting *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir.1993)). All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor. *Id*.

Plaintiffs argue that this standard – the question of "baselessness" – is more strict than a Rule 12(b)(6) standard. They argue that the claim must be so baseless as to be fraudulent. Defendants contend that that articulation is incorrect, and that failure to state a claim, in other words, a Rule 12(b)(6) standard, is sufficient. In a recent *en banc* opinion, the Fifth Circuit addressed the related (and more common) issue of the fraudulent joinder of a *party* to prevent removal. *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 572-73 (5th Cir. 2004). The court of appeals held that where

5

there is a question of improper joinder to prevent removal, the court should conduct a Rule 12(b)(6)-type analysis to determine whether a plaintiff has a reasonable chance of recovery against the joined party under state law – and, in the hopefully rare case where a plaintiff misstated or omitted discrete facts that would affect the joinder inquiry, the district court, may pierce the pleadings and conduct a summary inquiry into the facts. *Id.* The Court sees no reason why the approach would be different where the issue is the fraudulent joinder of a *claim* rather than a *party*. Thus, when the cases require that a claim be "baseless" to support a fraudulent joinder, that means that the claim meets the Rule 12(b)(6) standard for "failure to state a claim." To dismiss a claim under Rule 12(b)(6), a court must find it "appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief.'" *United States ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 653-54 (5th Cir. 2004).

Defendant Motient contends that the 1933 Securities Act claim is baseless because Plaintiffs' causes of action under the Act require a purchase or sale of securities, and the SkyTerra Agreement has not yet been consummated.[4] Section 12(a)(2) of the Securities Act provides that any defendant who:

---

[4] Defendant Motient makes another argument for removal, citing *Gallagher v. Donald*, 803 F.Supp. 899, 902-03 (S.D.N.Y. 1992). *Gallagher*'s interpretation of §1441(b) is that the first sentence of § 1441(b) (permitting removal when there is a federal question) in some circumstances trumps the language of § 1441(a), which states that removal is permitted "[e]xcept as otherwise expressly provided by Act of Congress." Plaintiffs argue that the language of § 1441(a) expressly forbids removal because the 1933 Securities Act prohibits it. For several reasons, the Court declines to follow *Gallagher*. First, the Court cannot find (nor apparently can the Defendants) any case where this interpretation of the removal statute is cited at all, nevermind with approval. Second, a leading federal jurisdiction treatise flatly states "Another limitation on removal is where there are specific statutory provisions prohibiting removal." ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 5.5 at 345 (4th ed. 2003). The upshot of this is that it is clear that §1441(a) lays out the general right to removal, and §1441(b) lays down the rules and restrictions in diversity cases. The *Gallagher* interpretation is simply not persuasive, and is, in all likelihood, wrong.

> offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable . . . to the person purchasing such security from him . . . .

15 U.S.C. § 77l. Section 11 provides a right of action to purchasers: "In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a); *In re Adams Golf, Inc. Securities Litigation*, 381 F.3d 267, 274 n.4 & 5 (3d Cir. 2004).

Although the plain language of the Securities Act of 1933 requires a purchase or sale of securities, and Plaintiffs do not contest the fact that no sale or purchase of securities has taken place, Plaintiffs contend they are entitled to seek injunctive relief to prevent the sale from going through. Plaintiffs argue that because the Securities Act expressly allows plaintiffs to sue "either at law or *in equity*," their Securities Act claims are not baseless.15 U.S.C. 77l (emphasis added). Plaintiffs further argue that it is "well-settled" that "the purchaser or seller requirement is relaxed in injunction cases under the federal securities laws, and that plaintiffs have the right to enjoin incipient securities violations." *See* Plaintiffs' Reply to Defendant's Opposition to Remand, at 7.

In support of this proposition, Plaintiffs cite a host of cases, *id*. at n.15, that purportedly allow plaintiffs to seek injunctive relief. *See e.g.*, *Langner v. Brown*, 913 F. Supp 260, 270 (S.D.N.Y. 1996) (talking of "well-established Second Circuit precedent holding that, in seeking injunctive relief under a § 10(b) claim, a plaintiff does not have to show damages in connection with the purchase or sale of any security."); *Warner Comm., Inc. v. Murdoch*, 581 F. Supp. 1482, 1984 (D.C. Del.

1984) ("In very limited circumstances, this Court and others have granted standing to sue for injunctive relief under various provisions of the securities acts, despite a party's lack of standing to sue for damages. These cases have involved instances where a party seeks to enjoin incipient securities violations prior to their occurrence or completion, and instances where a party, who is not directly injured by a securities violation, is in a better position to protect the interests of an injured class than are the class members themselves.); *Tully v. Mott Supermarkets, Inc.*, 540 F.2d at 194-95 (§ 10(b) of the Securities Exchange Act of 1934); *Crane Co. v. Harsco Corp.*, 511 F. Supp. 294, 299-302 (D.Del.1981) (§ 13(e) of the Securities Exchange Act); *Weeks Dredging & Contracting v. American Dredging*, 451 F.Supp. 468, 475-76 (E.D. Pa. 1978) (§ 14(e) of the Securities Exchange Act").

  What this long list of cases lacks is a citation to the Securities Act of 1933. Each of the cases deals with a different statutory scheme than the one at issue here. Moreover, the case law that does deal with the Securities Act tells a different story than the one penned by Plaintiffs. In *Blue Chip Stamps v. Manor Drug Stores*, the Supreme Court held that standing to bring a private cause of action under SEC Rule 10b-5 is limited to actual purchasers or sellers of securities. 421 U.S. 723 (1975). While this is not a Securities Act case, there is some relevant *dicta* in this case. The Supreme Court noted that when Congress wished to provide a remedy under the Securities Exchange Act of 1934 and the Securities Act of 1933 it had expressly done so. *Blue Chip Stamps*, 421 U.S. at 733-34 ("When Congress wished to provide a remedy to those who neither purchase nor sell securities, it had little trouble in doing so expressly."). The Court further noted that "[section] 11(a) of the 1933 Act confines the cause of action it grants to 'any person acquiring such security' while the remedy granted by § 12 of that Act is limited to the 'person purchasing such security.'"

*Id*. at 736. *See also 7547 Corp. v. Parker & Parsley Development Partners, L.P.*, 38 F.3d 211, 225 (5th Cir. 1994) (noting that the *Blue Chip Stamps* Court observed "that sections 11(a) and 12 of the Securities Act "are by their terms expressly limited to purchasers and sellers of securities"). The Fifth Circuit has been even more explicit:

> While Section 11's liability provisions are expansive – creating virtually absolute liability for corporate issuers for even innocent material misstatements – its standing provisions limit putative plaintiffs to the narrow class of persons consisting of those who purchase securities that are the direct subject of the prospectus and registration statement.

*Krim v. pcOrder.com, Inc.*, 402 F3d 489, 495 (5 th Cir. 2005) (citations omitted). Finally, *Initio, Inc. v. Hesse*, had this to say on the subject: "Initio also contends in its brief that it is entitled to an injunction under Sections 11 & 12 of the Securities Act of 1933, 15 U.S.C. §§ 77k-77l. That contention is clearly frivolous because both sections provide causes of action only for purchasers of securities." 474 F. Supp. 312, 319 n.9 (D.C. Del. 1979) (in context of case where plaintiff brought derivative action seeking injunction prohibiting public offering of securities on ground that it was an improvident business transaction and that registration statement was false and misleading).

Moreover, Plaintiffs' argument also overlooks the full text and plain language of of §§ 11 and 12. Plaintiffs base their claim that they are entitled to injunctive relief solely on the fact that the statute permits suits "at law or in equity." This argument, however, ignores the fact that the two statutes precisely define the remedy they permit, and neither includes injunctive relief. Specifically, § 12 states that one aggrieved under its provisions "may sue at either law or in equity . . . to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." 15 U.S.C. 77*l*(2). Likewise, § 11 states in subsection (a) that one injured by a false registration

statement "may, either at law or in equity, in any court of competent jurisdiction, sue. . . ." 15 U.S.C. § 77k(a). In subsection (e), it then defines the remedy: "The suit authorized under subsection (a) of this section may be to recover such damages as represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and" three different measures of value, dependent on the circumstances. *Id.* at § 77k(e). When a statute specifically delineates the remedy permitted, and does not include injunctive relief, the Court may not read that remedy into the statute. *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73 (2002) ("expressing one item of an associated group or series excludes another left unmentioned"). Here, the statute lays out a list of remedies the plaintiff may sue for "at law or in equity" and conspicuously omits injunctive relief.

Given that the Securities Act of 1933 requires a purchase or sale of a security, and the admitted *lack* of any case law providing that injunctive relief prior to a purchase or sale is available under §§ 11 or 12 of the 1933 Securities Act, and, furthermore, that the plain language of the statute excludes injunctive relief as a remedy, the Court finds that Plaintiffs' Securities Act claim is baseless, and fails to state a claim on which relief may be granted.

Additionally, the Court finds that the 1933 Securities Act claims were added to avoid removal. In their state court petition, Plaintiffs, in the "Jurisdiction" section, stated "In addition, one or more of the claims asserted in this petition, which are integrally related to the claims under the ICA and are all based on a single wrong, arise under Sections 11 and 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §77k and *l*, which provides for concurrent jurisdiction in state courts and which bars removal of suits to federal courts, 15 U.S.C. §77v." It is obvious that Plaintiffs anticipated the potential removal of their state court petition, as they addressed the removability of the suit in that

petition, and specifically asserted that the 1933 Securities Act claim prevented removal. Thus, Plaintiffs' own pleading demonstrates that they added the 1933 Securities Act claim to bar removal. "Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction." *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 183 (5th Cir. 1990).

Because the 1933 Act claims have no merit, and were added to prevent removal, the provision in the 1933 Act prohibiting removal is inapplicable. Accordingly, Plaintiff's Motion to Remand should be denied, as the remaining claim, brought under the Investment Company Act of 1940, is plainly removable under § 1441(a) and (b) as a claim raising a federal question.

### III.     The Investment Company Act Claims.

Both Defendants request the dismissal of the ICA claim under Rule 12(b)(6), for a variety of reasons. The Court will address the arguments in turn.

**A.     Standard of Review**

Under Federal Rule of Civil Procedure 12(b)(6), "a claim will not be dismissed unless the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395 (5th Cir. 2005). "A district court cannot dismiss a complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief.'" *United States ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 653-54 (5th Cir. 2004). The complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). "However, conclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003).

**B.      Derivative Suit**

Defendant Motient first argues that Plaintiffs' ICA claim is an improper attempt to avoid derivative suit requirements. Under Delaware Court of Chancery Rule 23.1, one of requirements to filing a derivative suit is that the stockholder "make presuit demand on the board [of directors]." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004) (citing chancery rule). Plaintiffs have not pled that they have made such a demand in any of their pleadings. Therefore, if the Court determines that Plaintiffs' ICA claim is derivative in nature, it must dismiss the that claim for failing to follow the requisite steps.

Under Delaware law,[5] the determination of whether a claim is direct or derivative is governed by the analysis set forth in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), where the court held that in deciding if a claim is direct or derivative,

> a court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.

845 A.2d at 1039. Specifically, the Delaware Supreme Court established that the resolution of whether a claim is direct or derivative must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually). *Id.* at 1035. "[U]nder *Tooley*, the duty of the court is to look at the nature of the wrong alleged, not

---

[5]Both parties agree that Delaware law applies because Motient is a Delaware corporation.

merely at the form of words used in the complaint." *In re Syncor International Corp. Shareholders Litig.*, 857 A.2d 994, 997 (Del. Ch. 2004).

There are several cases applying *Tooley* which shed light on whether the claims in this case are properly considered direct or derivative. In *Smith v. Waste Management, Inc.*, the plaintiff claimed that misleading public statements made by Waste Management executives induced him (and a class of a similarly situated shareholders) to hold onto their shares of Waste Management stock, resulting in deep losses. 407 F.3d 381 (5th Cir. 2005). The Fifth Circuit concluded that such claims were derivative, not direct, because the false or misleading statements, having been made publicly, impacted all shareholders equally. The Fifth Circuit found that under Delaware law, "when a corporation, through its officers, misstates its financial condition, thereby causing a decline in the company's share price when the truth is revealed, the corporation itself has been injured." *Id*. at 385. In *Manzo v. Rite Aid Corporation*, 2002 WL 31926606 (Del. Ch. Dec. 19, 2002), a decision cited by the Fifth Circuit in *Smith*, the court outlined when a shareholder claim might be direct rather in derivative, that court explained, "to state a direct claim [on the basis of a knowing misrepresentation made to shareholders by officers or directors of the corporation] plaintiff must identify some resultant injury that either affects some shareholders disproportionately to their pro rata stock ownership or affects those rights of shareholders that are traditionally regarded as 'incidents' of stock ownership." *Id.* at \*6.

Plaintiffs argue that their claim is direct because they are "asserting their direct rights under a contract that explicitly references them as Series A preferred shareholders." *See* Plaintiff's Response to Defendants' Motions to Dismiss at 11. Plaintiffs further argue that Motient's theory "fails as a matter of common sense," because in a derivative suit, the shareholder steps into the

13

corporation's shoes, therefore "accepting Motient's theory would mean that the corporation would be bringing suit against itself." *Id*. at 12. Plaintiffs cite no cases for this derivative suit model.

Plaintiffs' first argument fails to understand that even granting that they will, as Series A preferred stockholders, suffer some harm, that injury is not "independent of any alleged injury to the corporation." *Tooley*, 845 A.2d at 1039. In fact, Plaintiffs' Petition undermines their argument. In the Petition, Plaintiffs contend that if the SkyTerra Agreement is consummated: (1) "the proposed transaction is taxable to Motient and will require Motient to pay an estimated $50-80 million in corporate taxes;" (2) "the implied valuation for MSV in the proposed transaction has been discounted by nearly 33% off the price at which Motient was planning to buy SkyTerra's own interest in MSV;" and (3) "Motient will only have the right to propose one of the seven directors of SkyTerra's Board." These "injuries" are not independent of any alleged injury to Plaintiffs; instead, they are, even stated in Plaintiffs' own words, quite plainly *Motient's* injuries. To put it another way, Plaintiffs cannot show they "can prevail without showing an injury to the corporation," *Tooley*, 845 A.2d at 1039, and therefore they fail the first prong of the *Tooley* test.[6]

Even more telling is the relief requested by Plaintiffs. They ask for rescission of a contract between Motient and a third-party and repayment of monies paid by Motient to C&TA for its (C&TA's) consultation work. *See* Plaintiff's Original Petition at 15. In a factually similar case, the First Circuit found that, where a Plaintiff (proceeding on his own behalf) sued under § 47(b) of the

---

[6]This is the case even though some of Plaintiffs' pleadings allege injuries that they claim are theirs alone as stockholders. *See* Plaintiff's Original Petition, at 10-11 (*e.g.*, "the proposed transaction exchanges direct ownership of MSV by Motient, a valuable asset, for indirect ownership of MSV through SkyTerra, again with no added cash compensation to Motient's shareholders"). As Defendant Motient correctly points out, Plaintiffs' injuries are still tangential or attenuated because it is Motient that must suffer any alleged harm before it trickles down to the stockholders.

ICA for the rescission of a contract made by the corporation in which he was a stockholder, he had no standing to bring claims that properly belonged to the corporation. *Lessler v. Little*, 857 F.2d 866, 874 (1st Cir. 1988). Plaintiffs are not parties to the SkyTerra Agreement (nor are they a "nonparty to the contract who acquired a right under the contract," *see* 15 U.S.C. §80a-46(b)(1)). And Plaintiffs do not cite any cases purporting to show that a rescissionary remedy amounts to a benefit to them and not to Motient. As a consequence, Plaintiffs also fail the second prong of the *Tooley* test, and the Court recommends that the District Court dismiss Plaintiffs' ICA claims, as they are derivative claims for which Plaintiffs have not fulfilled the pre-suit requirements.

**C.    Standing**

In a corollary to the prior argument, Defendant Motient argues that Plaintiffs have no standing to pursue their ICA claim because they are not a party to the SkyTerra Agreement. Section 47(b)(1) of the ICA provides that:

> A contract that is made, or whose performance involves, a violation of this subchapter, or of any rule, regulation, or order thereunder, is unenforceable *by either party* (or by a nonparty to the contract who acquired a right under the contract with knowledge of the facts by reason of which the making or performance violated or would violate any provision of this subchapter or of any rule, regulation, or order thereunder) unless a court finds that under the circumstances enforcement would produce a more equitable result than nonenforcement and would not be inconsistent with the purposes of [the Act].

15 U.S.C. § 80a-46(b)(1) (emphasis added). Section 47(b)(2) states that to the extent that such a contract has been performed, "a court may not deny rescission at the instance of any party unless such court finds that under the circumstances the denial of rescission would produce a more equitable result than its grant and would not be inconsistent with the purposes of [the Act]." 15 U.S.C. § 80a-46(b)(2). Plaintiffs claim that they fit snugly within § 47(b) because they are a "nonparty who acquired a direct right under the contract." Plaintiffs' simply make this bald

15

assertion, back it up with no authority, and then continue on to their next argument. Plaintiffs further argue that they have direct standing as a third-party beneficiary under the ICA. For this proposition, Plaintiffs rely on Delaware and Texas state law cases dealing with third-party beneficiaries, and then extrapolate from this that they have produced evidence that they are third-party beneficiaries under the ICA.

Plaintiffs appear to have overlooked the plain language of the very statutory section they invoke. Section 47(b)(1) declares that contracts entered into in violation of the other provisions of the Investment Company Act are "unenforceable *by either party*." 15 U.S.C. § 80a-46(b)(1) (emphasis added). Plaintiffs' are not a party to the SkyTerra Agreement, nor does their complaint assert a derivative action on behalf of Motient, which is a party. More to the point, Plaintiffs cannot simply declare themselves "a nonparty who *acquired* rights under a contract" and cite no authority for the proposition. Generously construed, Plaintiffs' argument that they are third-party beneficiaries could be taken as an argument that they are non-parties who acquired a right under the contract (because the ICA does not use the term "third-party beneficiary"). But even this argument does not do the work Plaintiffs need it to. Section 302 of the Restatement (Second) of Contracts provides two means by which a non-party to a contract can acquire rights under a contract as a third-party beneficiary. The first is "if the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary." RESTATEMENT (SECOND) OF CONTRACT § 302. The second is if "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." RESTATEMENT (SECOND) OF CONTRACT § 302.

Neither of these circumstances fits the facts before the Court. There is absolutely no indication that Motient "intends to give [Plaintiffs] the benefit of the promised performance" under

the SkyTerra Agreement. RESTATEMENT (SECOND) OF CONTRACTS § 302. Further, a holding to that effect would turn every stockholder into a third-party beneficiary of every contract signed by the corporation in which they hold stock, a thoroughly unpragmatic result. Plaintiffs – quite clearly not *parties* to the SkyTerra agreement – are also not "nonpart[ies] to the contract who acquired a right under the contract," as that phrase is used in § 47(b) of the ICA. They therefore have no standing to assert a claim under § 47(b) of the ICA.[7] As a result, the Court recommends that the District Court dismiss Plaintiffs' ICA claims on this basis as well.

### D.    Independent Underlying Violation

Finally, both Motient and C&TA argue that Plaintiffs' complaint can be dismissed on its face because § 47(b) is only available upon a showing of other violations of the ICA. This appears to be the case, at least according to the few district courts that have ruled on the issue. *Jacobs v. Bremner*, 378 F. Supp 2d 861, 869 (N.D. Ill. 2005) (§ 47(b) only allows for relief where there is a violation of some other section of the ICA); *Mutchka v. Harris*, 373 F. Supp 2d 1021, 1027 (C.D. Cal. 2005) (same); *Taylor v. Paine Webber Cashfund, Inc.*, 559 F. Supp. 429, 438 (D. Conn. 1983) (same). *See also* Brief for Securities & Exchange Commission (SEC) as Amici Curiae submitted at Court's request, *Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429 (2d Cir. 2002) (stating that "a violation of Section 26(f) or 27(i) of the Investment Company Act would clearly give rise to a cause of action under Section 47(b)") *available at* 2001 WL 34113763. Plaintiffs' argue that, in their

---

[7]Defendant Motient also argues that the ICA claim is premature because the Plaintiffs' seek rescission of the SkyTerra Agreement when the deal is not yet consummated, and under the ICA only contracts that have been performed are subject to rescission. Defendant Motient cites no case law to support this proposition, and the Court, not inclined to decide matters it does not have to, will not reach the issue at this time.

Petition, they alleged a violation of Sections 7(a) and 8(e) of the ICA because they have failed to file with the SEC even though they are an investment company.

However, whether this can serve as the "other" violation of the ICA is a question that the Court need not reach because the Court is persuaded that there are other (stronger) grounds on which to rest its decision. In any event, even if the Court found that Plaintiffs had not properly pled an underlying violation of the ICA, the proper remedy would be to allow Plaintiffs to replead.

## IV.  RECOMMENDATION

Based on the above, the Magistrate Court **RECOMMENDS** that the District Court **DENY** Plaintiffs' Motion to Remand and for Summary Remand and Expedited Consideration. *See* Clerk's Doc. No. 7. The Magistrate Court **RECOMMENDS** that the District Court **GRANT** Defendant Motient Corporation's Motion to Dismiss, *see* Clerk's Doc. No. 19, and **GRANT** Defendant Capital & Technology Advisor's Inc.'s Motion to Dismiss Plaintiffs' Complaint, *see* Clerk's Doc. No. 10, and that the District Court **DISMISS** this suit for failure to state a claim on which relief may be granted.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 17th day of November, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE